IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANITA K. LORINC,<br><br>  Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br>SUSAN BALLARD,<br>OFFICER E. CASTRO, *et al.*,<br><br>  Defendants. | Case No. 22-cv-00200-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS** |

On April 28, 2022, Plaintiff Anita Lorinc initiated this action by suing Defendants−the City & County of Honolulu (City), former Honolulu Police Department (HPD) Chief Susan Ballard (Ballard), and HPD Officer E. Castro (Castro and, with Ballard, the Officer Defendants)−in connection with Lorinc's arrest and detention in May 2020. On August 12, 2022, Lorinc filed the operative First Amended Complaint (FAC), naming the same Defendants. More than eight months after the start of this case, only one of these Defendants, the City, has been served with either the Complaint or the FAC.

Having been served, the City filed the instant motion, seeking dismissal of "the claims" raised in the FAC, including claims asserted against both the unserved Officer Defendants and those against the City. While the Court agrees that the

claims against the City are inadequately pled under federal pleading standards and, thus, should be dismissed, the Court declines to address the City's arguments with respect to claims that can only be construed as being asserted against the unserved Officer Defendants, given that those defendants have not appeared in this action, have not joined in the relief the City seeks, and have presumably not even sought nor been granted representation by the same counsel representing the City.  As a result, for the reasons set forth below, the motion to dismiss, Dkt. No. 27, is GRANTED with respect to claims against the City.  Dismissal is with partial leave to amend, as explained below.  Further, with respect to claims against the unserved Officer Defendants, the motion to dismiss is DENIED WITHOUT PREJUDICE to renewal should those defendants be served and appear in this action.

## BACKGROUND

### I. The Alleged Incident

The FAC alleges that the following events took place on May 1, 2020.  At around noon, Lorinc, a journalist, was peaceably participating in a demonstration at the State Capitol in Honolulu, Hawaiʻi.  FAC at ¶¶ 10, 18, Dkt. No. 17.  Castro "grabbed" Lorinc and told her she was under arrest, but refused to explain why.  *Id*. at ¶ 11.  Lorinc did not resist arrest or act violently toward Castro.  *Id*. at ¶ 12.  In arresting Lorinc, though, Castro dragged her from the street and transported her to the Honolulu Police Station.  *Id*. at ¶ 13.

While at the Police Station, various unknown individuals, identified as "Doe Defendants," kicked, choked, and beat Lorinc in the presence of other officers. *Id.* at ¶ 14. These unknown individuals also refused to provide water to Lorinc, even though she was dehydrated. *Id.* Lorinc was incarcerated for several hours and not released until the evening of May 1, 2020. *Id.* at ¶ 20. As a result of these actions, Lorinc suffered heat stroke, bruising to her neck and jaw, abrasions, contusions, and severe emotional distress. *Id.* at ¶ 15.

## II. The FAC

Four claims are asserted in the FAC under 42 U.S.C. Section 1983 (Section 1983) and State law. These claims are brought against the Officer and Doe Defendants, in their official and individual capacities, and/or the City. In Claim One, the FAC alleges that Castro and the Doe Defendants' actions caused Lorinc to suffer an unreasonable search and seizure in violation of the Fourth, Fifth, and Fourteenth Amendments. Claim One also appears to allege that Lorinc's right to equal protection was violated. In Claim Two, the FAC alleges that Castro arrested Lorinc without probable cause in violation of due process and equal protection under the Fourth, Fifth, and Fourteenth Amendments. In Claim Three, the FAC alleges that the City and Ballard had policies, practices, or customs, including a failure to train police officers, that were the "moving force" behind Lorinc's alleged injuries. In Claim Four, the FAC alleges that at least Castro altered a police report or failed to

prepare one in order to "disrupt" Lorinc's lawsuit in violation of the Fifth and Fourteenth Amendments.

### III.   The Motion to Dismiss

The City moves for dismissal of "the claims" in the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 27-1.  First, the City seeks dismissal of Lorinc's claims related to alleged policies, practices, or customs, arguing that Lorinc has failed to allege any such claim under applicable law.  Second, the City seeks dismissal of Lorinc's Fifth Amendment claims because none of the defendants are federal actors.  The City also seeks dismissal of Lorinc's Fourteenth Amendment claims to the extent the Fourth Amendment is the applicable constitutional source. Third, the City seeks dismissal of Lorinc's equal protection claims as inadequately pled.  Fourth, the City argues that Lorinc's official capacity claims against the Officer Defendants should be dismissed as duplicative.  Fifth, the City argues that Claim Four should be dismissed as inadequately pled.  Sixth, the City argues that any claim premised on Lorinc being a journalist should be dismissed as conclusory.[1]

In opposition to the motion to dismiss, Dkt. No. 31, Lorinc first responds that she has properly pled the City's liability for maintaining a policy, practice, or custom, including a failure to train, resulting in her injuries.  Second, Lorinc argues

---

[1] The City also argued that this Court should decline to exercise supplemental jurisdiction over Lorinc's State law claim(s).  Dkt. No. 27-1 at 16-17.  In its reply, however, the City, at least for now, abandoned this argument.  Dkt. No. 32 at 12.  Therefore, the Court does not further address it.

that her Fifth and Fourteenth Amendment claims should survive because the Officer and/or Doe Defendants' actions "shock[] the conscience…."  Third, Lorinc argues that her equal protection claim is adequately pled in light of her allegedly being targeted as a protestor.  Fourth, Lorinc argues that her official capacity claims are not duplicative because she seeks prospective injunctive relief in this case.  Fifth, Lorinc argues that a claim for falsification of evidence and/or "police cover-up" is recognized in the Ninth Circuit and, thus, Claim Four should not be dismissed.  Sixth, Lorinc argues that she has adequately pled that she was targeted for being a journalist.

After a reply in support of the motion to dismiss was filed, Dkt. No. 32, the Court elected to decide the motion without a hearing, Dkt. No. 33.  This Order now follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

The Court begins by setting forth the legal framework for suing a municipality, such as the City, under Section 1983.

In *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-691. In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v, Harris*, 489 U.S. 378, 388 (1989). A municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff can allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for

7

establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (quotation omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee(s) to commit the constitutional deprivation. *Id*. at 391; *Monell*, 436 U.S. at 694.

Here, Lorinc has not come close to satisfying these requirements. First, although Lorinc contends that she adequately alleged an "official" policy, at no point in the FAC (or her opposition) does she attempt to identify any such official policy. Rather, she simply uses the word "official" before purported policies of the City. *See* FAC at ¶ 25. Describing a policy as "official", however, does not make it so. Instead, she must point to a specific enactment or authorization of the City. *See Monell*, 436 U.S. at 690. Here, she has failed to do so. Second, although Lorinc also purports to allege so-called customs, at no point does she allege that any of the

same are "so permanent and well settled" to operate with the force of law. In fact, the FAC alleges no case, similar or otherwise, that could be considered even one example of the purported customs being practiced, let alone being settled.[2]

Third, other than repackaging her underlying alleged constitutional violations as examples of inadequate training, Lorinc fails to allege any training that the Officer or Doe Defendants received, how the same was inadequate, or how the same caused any of the alleged underlying conduct. Lorinc further fails to allege, beyond conclusory statements, which, if any, supervisors were aware of any alleged deficiencies in training or how any such awareness could constitute deliberate indifference. In her opposition, Lorinc's only response is to contend that the alleged conduct here−multiple police officers allegedly "mistreating" an "older woman/journalist"−means that the consequences of failing to train those officers was "patently obvious…." Dkt. No. 31 at 9-11. As Lorinc acknowledges, however, examples of "patently obvious" inadequate training are "rare." *Id*. at 9. She has not shown that this case is or involves one of those rare examples. This is particularly so where, as mentioned, Lorinc does not even identify the training officers received or how the same was inadequate, let alone so insufficient that unconstitutional consequences were obvious.

---

[2]Similarly, in her opposition, Lorinc argues that case law supports the proposition that "evidence of inaction…in the face of widespread constitutional violations" can support the inference of an unconstitutional custom. Dkt. No. 31 at 5. For present purposes, the important word in that passage is "widespread." Here, there is no allegation of widespread constitutional violations necessary to demonstrate a custom or unofficial policy.

Finally, Lorinc briefly alleges that the City and/or Ballard "ratified" the alleged conduct of Castro and the Doe Defendants by "failing to investigate and/or discipline the offending officer(s)." FAC at ¶ 29. However, as the Ninth Circuit has repeatedly explained, ratification "generally requires more than acquiescence, and a mere failure to discipline does not amount to ratification of allegedly unconstitutional actions." *Dodge v. Evergreen Sch. Dist.*, __ F.4th __, 2022 WL 17984059, at *14 (9th Cir. Dec. 29, 2022) (quotations and ellipsis omitted); *see Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("[I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed acts does not constitute approval."). Here, the only action Lorinc alleges is the mere failure to discipline. Therefore, she has failed to state a claim for municipal liability based on ratification.

For these reasons, Lorinc's claims of municipal liability against the City must be dismissed for failure to state a claim and the motion to dismiss is GRANTED with respect to the same. Although Lorinc has not come close to stating any such claim, because it is theoretically possible for her to correct the above-identified deficiencies and this is the first motion to dismiss, the Court will allow leave to amend her claims of municipal liability against the City, should Lorinc choose to do so.

This leaves the City's other arguments in the motion to dismiss.  As far as the Court is concerned, except in one instance set forth below, all of these other arguments concern claims asserted against Castro, Ballard, and/or the Doe Defendants.[3]  In other words, individuals rather than the City itself.  None of these individuals, however, have been served.[4]  Among other things, therefore, Castro and Ballard have not indicated that they wish to join in the arguments the City raises with respect to claims asserted only against them.  The Court also declines to take this presumptive leap on their behalf.  As a result, the Court will not further address the City's arguments outlined above and the motion to dismiss is DENIED WITHOUT PREJUDICE in that respect.  Should the Officer Defendants be served and appear in this action, they may renew any arguments raised in the motion to dismiss at the appropriate time.

The one exception is the City's argument concerning Lorinc's official capacity claims against the Officer Defendants.  As the City correctly observes, those claims are ones properly asserted against the City itself, rather than the Officer Defendants.  *See Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) ("As a

---

[3]Specifically, the City's arguments concerning Lorinc's Fifth Amendment claims, Fourteenth Amendment claims, equal protection claims, the alleged failure to provide a police report, and any claim premised on Lorinc being a journalist.

[4]In that regard, the assigned Magistrate Judge gave Lorinc until November 28, 2022 to serve the Officer Defendants or file a motion for additional time to do so.  Dkt. No. 24.  As of the date of this Order, however, Lorinc has not served the Officer Defendants.  Further, although the Magistrate Judge re-scheduled a Rule 16 conference also set for November 28, 2022, Dkt. No. 30, as far as this Court can discern, no similar change occurred in the deadline to serve the Officer Defendants, *see id*.

general matter, individual or 'personal capacity suits seek to impose personal liability upon a government official for wrongful actions he takes under color of law,' and that were taken in the course of his official duties. By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they 'generally represent merely another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S 159, 165-166 (1985)) (citations, ellipsis, and internal quotation marks omitted). Therefore, the City is the proper defendant for the official capacity claims. As a result, the motion to dismiss is GRANTED to the extent that the Officer Defendants, in their official capacities only, are dismissed from this case.[5][6]

## CONCLUSION

For the reasons stated herein, the motion to dismiss, Dkt. No. 27, is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART. Lorinc may have until January 30, 2023 to amend her claims of municipal liability against

---

[5] Essentially, therefore, the Officer Defendants are being substituted by the City as the defendant for any official-capacity claim. *See Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997).
[6] Lorinc's citation to *Ex Parte Young*, 209 U.S. 123 (1908), Dkt. No. 31 at 14-15, does not change anything. Among other things, as the City observes, Dkt. No. 32 at 10-11, *Ex Parte Young* requires, *inter alia*, an *ongoing* violation of federal law. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). Here, Lorinc alleges no such ongoing violation.

the City. Should Lorinc choose to so amend, she must also re-allege all other claims on which she wishes to proceed in this action.

IT IS SO ORDERED.

Dated: January 9, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

*Anita K. Lorinc v. City and County of Honolulu, et al*; Civil No. 22-00200 DKW-WRP; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS**