IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANITA K. LORINC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF HONOLULU,<br>SUSAN BALLARD,<br>OFFICER E. CASTRO, *et al.*,<br><br>　　　　Defendants. | Case No. 22-cv-00200-DKW-WRP<br><br>**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS** |

On January 9, 2023, the Court, *inter alia*, dismissed Plaintiff Anita Lorinc's claims against Defendant City & County of Honolulu (City), finding that she had "not come close to satisfying" the requirements for alleging a plausible *Monell* claim against the City.   Nonetheless, the Court allowed Lorinc leave to amend those claims and, on January 30, 2023, she filed a Second Amended Complaint (SAC) related to her arrest and detention in May 2020.   The City now moves to dismiss the claims against it again, arguing that the SAC fails to address the deficiencies in Lorinc's claims previously identified by the Court.   The Court agrees.   While Lorinc again pursues multiple theories of municipal liability against the City, she fails to allege, *inter alia*, a specific policy, specific prior incidents of misconduct, specific ratification of the alleged misconduct here, or

deliberately indifferent training failures.   In addition, because Lorinc has been provided an opportunity to amend these claims and has done nothing to change the outcome, dismissal of the claims of municipal liability against the City is with prejudice and the motion to dismiss, Dkt. No. 37, is GRANTED in that respect. Finally, in the current briefing, although both parties mention Lorinc's failure to serve the non-municipal Defendants in this action, the Court will leave said matter to the assigned Magistrate Judge who has scheduled a conference to address the service of the other Defendants.   *See* Dkt. Nos. 35, 40.

## BACKGROUND

I.   **The Alleged Incident**

Much like the First Amended Complaint, the SAC alleges that the following events took place on May 1, 2020.   At around noon, Lorinc, a journalist, was peaceably participating in a demonstration at the State Capitol in Honolulu, Hawai'i.   SAC at ¶¶ 10, 18, Dkt. No. 36.   Defendant E. Castro, an officer with the Honolulu Police Department (HPD), "grabbed" Lorinc and told her she was under arrest, but refused to explain why.   *Id*. at ¶¶ 6, 11.   Lorinc did not resist arrest or act violently toward Castro.   *Id*. at ¶ 12.   In arresting Lorinc, though, Castro dragged her from the street and transported her to the Honolulu Police Station.   *Id*. at ¶ 13.

2

While at the Police Station, various unknown individuals, identified as "Doe Defendants," kicked, choked, and beat Lorinc in the presence of other officers.   *Id.* at ¶ 14.   These unknown individuals also refused to provide water to Lorinc, even though she was dehydrated.   *Id.*   Lorinc was incarcerated for several hours and not released until the evening of May 1, 2020.   *Id.* at ¶ 20.   As a result of these actions, Lorinc suffered heat stroke, bruising to her neck and jaw, abrasions, contusions, and severe emotional distress.   *Id.* at ¶ 15.

## II.   **The SAC**

Four claims are asserted in the SAC under 42 U.S.C. Section 1983 (Section 1983) and State law.   These claims are brought against Defendants Castro, former Chief of Police Susan Ballard, the Doe Defendants, and/or the City.[1]   In Claim One, the SAC alleges that Castro and the Doe Defendants' actions amounted to an unreasonable search and seizure of Lorinc in violation of the Fourth, Fifth, and Fourteenth Amendments.   Claim One also appears to allege that Lorinc's right to equal protection was violated.   In Claim Two, the SAC alleges that Castro and the Doe Defendants arrested Lorinc without probable cause and/or unlawfully detained

---

[1] The SAC states that the claims against Castro, Ballard, and the Doe Defendants are asserted against them in both their individual and official capacities.   SAC at ¶ 8.   As the Court explained in its prior Order, though, the City is the proper defendant for such official capacity claims.   Dkt. No. 34 at 11-12.   Moreover, the Court did not provide leave for Lorinc to amend these claims.   Therefore, as determined in the prior Order, Castro, Ballard, and the Doe Defendants shall remain dismissed from this case in their official capacities.

her, all in violation of due process and equal protection under the Fourth, Fifth, and Fourteenth Amendments.   Claim Two may also allege that Lorinc was unlawfully arrested under State law.   In Claim Three, the SAC alleges that the City and Ballard had policies, practices, or customs, including a failure to train police officers, that were the "moving force" behind Lorinc's alleged injuries.   In Claim Four, the SAC alleges that at least Castro altered a police report or failed to prepare one in order to "disrupt" Lorinc's lawsuit in violation of the Fifth and Fourteenth Amendments.

### III.   The Motion to Dismiss

On February 13, 2023, the City moved to dismiss this case with prejudice, arguing that the SAC fails to address the deficiencies identified in the Court's January 9, 2023 Order.   Dkt. No. 37-1.   The City further argues that any State law claim for unlawful arrest is inadequately pled.   The City also argues that this case should be dismissed because Lorinc has failed to timely serve any of the other Defendants.   On March 10, 2023, Lorinc filed an opposition to the motion to dismiss, arguing that the SAC adequately states a claim against the City for municipal liability.   Dkt. No. 39.   Lorinc also asserts that she does not know the first name of Officer Castro, which, presumably, is Lorinc's explanation for why Castro has not been served with any version of the pleadings in this case.   After a

reply in support of the motion to dismiss was filed, Dkt. No. 41, the Court elected to decide the motion without a hearing, Dkt. No. 42.   This Order now follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."   Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere

possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

The Court again begins by setting forth the legal framework for suing a municipality, such as the City, under Section 1983.

In *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978), the U.S. Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official

6

decisionmaking channels." *Id*. at 690-691.   In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v, Harris*, 489 U.S. 378, 388 (1989).   A municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff can allege municipal liability under Section 1983 in one of three ways.   First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action.   *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").   In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013).   Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law.   *Monell*, 436 U.S. at

691 (quotation omitted).   Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants.   *City of Canton*, 489 U.S. at 388.   Ordinarily, a "pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train."   *Connick v. Thompson*, 563 U.S. 51, 62 (2011).   In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee(s) to commit the constitutional deprivation.   *Id*. at 391; *Monell*, 436 U.S. at 694.

Here, Lorinc has failed to satisfy these requirements in spades.   First, other than placing the word "official" before purported policies of the City, Lorinc points to no specific enactment or authorization of the City that could constitute such an official policy.   *See Monell*, 436 U.S. at 690.   Second, similarly, other than placing the word "widespread" before purported customs of the City, Lorinc fails to allege how any of the purported customs could be considered "so permanent and well settled" to operate with the force of law.   *See id*. at 691.[2]

---

[2]Once again, in her opposition, Lorinc also argues that case law supports the proposition that "evidence of inaction…in the face of widespread constitutional violations" can support the inference of an unconstitutional custom.   Dkt. No. 39 at 7, 11, 13.   The SAC, just like the First Amended Complaint, though, does not even attempt to allege the existence of *widespread* constitutional violations necessary to demonstrate a custom or unofficial policy.

Third, in the SAC, Lorinc alleges that the City and Ballard failed to train officers to "provide basic medical attention, including water or fluids to dehydrated arrestees such as the Plaintiff…."   SAC at ¶ 33.   Lorinc fails to allege, though, any "pattern of similar constitutional violations by untrained employees…."   *See Connick*, 563 U.S. at 62.   In fact, she does not identify even one other such similar incident.   Instead, in her opposition, she relies upon the "single-incident" liability theory "hypothesized" in *Canton*, which requires "patently obvious" inadequate training.   *See id*. at 63; Dkt. No. 39 at 12.   As the Court discussed in the January 9, 2023 Order, though, examples of such inadequate training are "rare" and, here, Lorinc has again not shown that this case is or involves one of those rare examples.   *See* Dkt. No. 34 at 9.   That is particularly so given that the SAC does not allege what training officers actually received in this regard or how that specific training was so inadequate that unconstitutional consequences were obvious.   *See id*.

Finally, in one passing word of the SAC, Lorinc alleges that the City and/or Ballard "ratified" the alleged conduct of Castro and the Doe Defendants by "failing to investigate and/or discipline the offending officer(s)."   SAC at ¶ 29.   However, as the Court also explained in the January 9, 2023 Order, ratification "'generally requires more than acquiescence, and a mere failure to discipline does not amount to ratification of allegedly unconstitutional actions.'"   Dkt. No. 34 at 10 (quoting

*Dodge v. Evergreen Sch. Dist.*, 56 F.4th 767, 788 (9th Cir. 2022)).   Here, the only action Lorinc alleges is acquiescence.   Therefore, she has again failed to state a claim for municipal liability based on ratification.

For these reasons, Lorinc's claims of municipal liability against the City are dismissed.[3]   Further, because Lorinc was previously provided an opportunity to correct the deficiencies with these claims, and has failed to do so despite instructions, dismissal is with prejudice.   As a result, the motion to dismiss, Dkt. No. 37, is GRANTED with respect to the claims of municipal liability.

The next matter concerns the lack of service on Castro and Ballard.   On November 1, 2022, the assigned Magistrate Judge set a scheduling conference for November 28, 2022 and instructed Lorinc that, if she needed additional time to serve any Defendant, she must file an appropriate motion by the same date.   Dkt. No. 24.   On November 18, 2022, the Magistrate Judge moved the conference to February 7, 2023, Dkt. No. 30, and Plaintiff did not (and has not) filed an "appropriate motion" before or after November 28, 2022.   Next, on January 30, 2023, the Magistrate Judge continued the conference until April 11, 2023, and stated that, in her conference statement, Lorinc must address service on Castro and Ballard.   Dkt. No. 35.   Finally, on March 13, 2023, due to the instant motion to

---

[3]It is, thus, unnecessary to address any other reasons the City may raise in its motion for dismissing the claims of municipal liability against it.

10

dismiss, the Magistrate Judge continued the conference until June 14, 2023, Dkt. No. 40, which will be almost 14 months since the initiation of this case in April 2022.

In this light, because the Magistrate Judge has established a schedule for Lorinc to address her failure to serve Castro and Ballard, seeing that process through in the first instance is the appropriate course of action.[4]

## <u>CONCLUSION</u>

To the extent set forth herein, the motion to dismiss, Dkt. No. 37, is GRANTED.   The claims of municipal liability against the City are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 31, 2023 at Honolulu, Hawaiʻi.



_____
Derrick K. Watson
Chief United States District Judge

_Anita K. Lorinc v. City And County of Honolulu, et al;_ Civil No. 22-00200 DKW-WRP; **ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS**

---

[4]Pending the Magistrate Judge's scheduling conference, the Court will reserve ruling on the City's argument for dismissing any claim asserted against it under State law for unlawful arrest.

11